James **BAAKE** et al., Plaintiffs,

v.

**GENERAL AMERICAN TRANSPORTA-
TION CORPORATION**, a cor-
poration, Defendant.

No. 70 C 2926.

United States District Court,
N. D. Illinois, E. D.

Nov. 14, 1972.

Schippers, Betar, Lamendella &
O'Brien, Chicago, Ill., for plaintiffs.

Allan Gunn and Raymond J. Kelly, Jr.,
Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

PARSONS, District Judge.

This case is before me today for rul-
ing on cross motions for summary judg-
ment by plaintiffs and defendant.

The facts of the case have been stipu-
lated to by all parties concerned and are,
therefore, well documented.

The defendant, is a New York corpo-
ration, which maintained a facility in
Milwaukee, Wisconsin for the mainte-
nance and repair of railroad refrigerator
cars until July 12, 1968 (hereinafter re-
ferred to as the "Milwaukee car re-
pair shop"). Plaintiffs are former em-
ployees of the defendant at that shop
and were at all relevant times, members
of Local Lodge No. 390, Brotherhood
Railway Carmen of the United States
and Canada (hereinafter referred to as
the "Union").

Plaintiffs were in a collective bargaining unit represented by the Union and were covered by a collective bargaining agreement dated June 13, 1967 between the defendant and the Union.

On September 13, 1966, defendant and the Union entered into a Pension Agreement which became effective November 1, 1966, and which provided that it would remain in effect until midnight, December 31, 1969 and thereafter from year to year until written notice of termination was given by either party not more than ninety days, nor less than sixty days prior to December 31, 1969 or on or before any annual expiration date thereafter.

During the period November 1, 1966 through July 1, 1968 plaintiffs retired under the said Pension Agreement and began to receive monthly pensions. The benefits under the Pension Agreement were provided by contributions made by the Company to a trust fund held by the First National Bank of Chicago. The amount of the contributions was determined by an actuarial firm.

On April 29, 1968 defendant notified the Union that it was considering curtailment of work at its Milwaukee car repair shop and on June 7, 1968 its decision to do so was announced. Defendant and the Union entered into negotiations concerning the effect of curtailment of operations at the Milwaukee car repair shop and held meetings pursuant to that end in May, June, July, October and November of 1968. When the defendant and the Union were unable to reach agreement on the subject of pensions the dispute was referred to counsel for the defendant and the Union.

The Union's position was that pensions should be paid to employees who retired under the Pension Agreement for their lifetime. The defendant's position was that it ought to be required only to pay pensions from the trust until amounts contributed by defendant during the term of the Pension Agreement were exhausted.

On October 8, 1969 representatives of the defendant notified the Union that defendant elected to terminate the Pension Agreement as of December 31, 1969. On December 19, 1969 the defendant and the Union entered into a written "Termination Agreement" dated December 19, 1969. Plaintiffs were notified on July 28, 1970 that amounts available in the trust fund would be sufficient to provide monthly pensions only for a portion of 1970. Plaintiffs received pensions in full for all months up to and including August of 1970 and partial pensions for the month of September of 1970. Since the latter date plaintiffs have not received any further pension benefits. Plaintiffs then brought an action under Section 301 et seq. of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 et seq., claiming that the defendant had breached its Pension Agreement with the Union and asking for specific performance of that Agreement. Thereafter, the cross motions for summary judgment that are before the Court on this date were filed.

Plaintiffs allege two grounds for their right to summary judgment. The first ground is that "The unambiguous terms of the Pension Agreement, specifically vest in them an absolute right to a lifetime pension once all the conditions have been fulfilled." The second ground is that "The doctrine of equitable estoppel prohibits the defendant from now denying that plaintiffs are entitled to full pension."

Despite the compassion that I feel for the plaintiffs' plight I find I must hold for the defendant for the reasons that follow.

It is obvious beyond any need for explanation that a contract must be construed so as to give effect to all of its provisions. Thus, all portions of the Pension Agreement must be read in the light of all other provisions of that Agreement and the Termination Agreement. It would be well at this time to

elucidate those provisions of the Agreements that I have considered in reaching my decision.

Article IV, Section 4.2 of the Pension Agreement *Company Contributions* states:

"The Company agrees to contribute to the Pension Fund from time to time during the term of this Pension Agreement amounts which shall be sufficient in the aggregate (based upon estimates prepared from time to time by an actuary selected by the Company or life insurance company selected by the Company) to provide the benefits set forth in this Pension Agreement."

Article IV, Section 4.3 *Limitation on Liability* provides:

"Upon the establishment of a Pension Fund, all benefits provided by this Pension Agreement shall be paid solely out of that Pension Fund and neither the Company nor any agent or representative of the Company, by reason of this Pension Agreement, or any other reason, shall be liable, in any manner, for any such benefits."

■ By the above provisions the defendant's obligation is limited to those amounts paid into the Pension Fund.

Defendant contributed to the fund beginning with the effective date of the Pension Agreement and ending with its termination on December 31, 1969. Defendant correctly contends that its contributions were to be based upon estimates made by an actuary of amounts necessary to provide for benefits set forth in the Plan and that the amounts so contributed were insufficient not because the estimates were faulty but because the Pension Agreement terminated within a few years after its adoption when defendant closed the Milwaukee car repair shop.

The Termination Agreement of December 19, 1969 provides in Paragraph 4 *Pension*:

"It is understood and agreed that the 'Pension Agreement' should be terminated in accordance with the provisions of Article VIII of said Agreement on December 31, 1969 and that the assets of the fund shall be allocated as of that date in the manner and order of precedence set forth in Article VII of the Agreement."

Article VII explicitly limits the right of the pensioners as follows:

"In the event of termination of the pension program embodied in this Pension Agreement, the rights of all covered Employees and Pensioners to benefits shall thereupon become vested to the extent of the assets then remaining in the Pension Fund, which shall, after providing for the expenses of the pension program and of the Pension Fund, be allocated for the purpose of paying benefits * * * * *."

The order of preference follows beginning with providing for the benefit of pensioners.

Therefore, the parties to the Pension Agreement agreed in the Termination Agreement that the Pension Fund would be distributed as the Pension Agreement provided.

It is evident that the provisions of Article VII of the Pension Agreement read in conjunction with the Termination Agreement lead to the conclusion that the parties to the Pension Agreement realized that upon termination of the Pension Agreement all assets in the Fund would be distributed to the pensioners only to the extent that they were available in the Fund.

Article VIII of the Pension Agreement *Termination* Section 8.1 *Term* provides:

"This Pension Agreement shall be effective as of November 1, 1966 and shall remain in full force and effect until midnight December 31, 1969 and thereafter shall remain in full force and effect from year to year unless written notice of termination of this Pension Agreement is given by either party to the other not more than 90 nor less than 60 days prior to Decem-

ber 31, 1969 or on or before any annual expiration date thereafter."

Such written termination was given by defendant on October 8, 1969 to become effective as of December 31, 1969.

Plaintiffs contend that Article III, Section 3.1 *Period of Payment* delineates the period of payment.

"The first monthly benefit check shall be payable for the months specified in Article II for commencement of pensions. The last benefit check shall be payable for the month in which the Pensioner dies or resumes employment with the Company."

Plaintiffs' contention would be correct if this provision could be read in limbo unencumbered by the other quoted provisions of both the Pension Agreement and the Termination Agreement. That, of course, is an impossibility. When all of the provisions are read as a whole the conclusion that must be drawn is that the intentions of the parties to the Agreement have been effected.

The above findings lead to the conclusion that the doctrine of promissory estoppel may not be invoked. The Pension Agreement was performed according to its terms.

The plaintiffs have alleged that "they have changed their position to their irrevocable detriment in reliance upon the prior acts and declarations of the defendant." Yet, there is no evidence that plaintiffs' continued employment for the defendant was induced by the promise of a pension or that their continued employment was detrimental to them.

Defendant properly contends that plaintiffs "cannot object that something which they had was taken away."

The Pension Agreement as it existed when read in light of the entire contract was fully performed and came to an end by its own terms.

Unfortunately those terms did not cover the pensioners for their lifetime but rather for their lifetime as long as their lifetime existed and was completed within the lifetime of the Agreement.

It is, therefore, adjudged, ordered and decreed that summary judgment be entered in favor of the defendant.