William A. MURPHY et al., Plaintiffs,

v.

The HEPPENSTALL COMPANY, Defendant.

Civ. A. No. 79–817 Q.

United States District Court, W. D. Pennsylvania.

Aug. 8, 1979.

William H. Powderly, III, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

Frank J. Lucchino, Pittsburgh, Pa., for plaintiffs.

## OPINION

DUMBAULD, District Judge.

Plaintiffs are retired employees of defendant Heppenstall Company who had been receiving pension benefits until defendant's financial position became straitened and payments stopped. In a cognate

case this Court by order of June 28, 1979, in No. 78–1431 terminated defendant's plan in pursuance of ERISA, and benefits guaranteed under that statute will be paid to defendant's employees by the Pension Benefit Guaranty Corporation. Any recovery from defendant would be of course diminished by such amounts, if any, as may be paid by PBGC. Defendant moves to dismiss or refer to arbitration, relying on the policy in favor of labor arbitration enunciated in the *Steel Trilogy* and other cases.

The *sedes materiae* of plaintiffs' claim is found in Section 1.3 of the pension agreement between defendant and Local 1601 of the United Steelworkers (Ex. 1 to Motion). It is there agreed that "Subject to the corporate action required to provide the pension benefits [and to IRS approval; and it is not disputed that these conditions have been complied with[1]] the following pension benefits shall be provided by the Company or caused to be provided by the Company for the participants."[2]

Section 7.1 provides that:

If any difference shall arise between the Company and any participant who shall be an applicant for a pension as to such participant's right to a pension or the amount of his pension [an impartial umpire shall decide] pursuant to the provisions of this agreement.

Section 8.1 reads:

For the purpose of supplying the pension benefits herein provided, the Company may establish or cause to be established, a pension trust or trusts or may utilize any existing trust or trusts heretofore established by or on behalf of the Company. The Company is free to determine the manner and means of making provision for funding and paying the pension benefits set forth in this Agreement.[3]

Section 10.2 of both agreements provides:

Any benefit properly payable pursuant to this Agreement shall continue to be payable, notwithstanding the termination or expiration of this Agreement.

An amendment required by IRS to conform to ERISA added a new sentence to Section 10.2:

In the event that this Agreement is terminated, in whole or in part, the rights of any participant with respect to. whom such termination shall have occurred shall, from the date of such termination or partial termination, be fully vested and nonforfeitable, subject to divestment by reason of death or operation of law, in the benefits established under the Agreement as of the date of such termination or partial termination is effective to the extent those benefits are funded by the Company in accordance with the provisions of Section 8 of this Agreement.

Defendant contends that it is not liable for any benefits in excess of those payable from the (now exhausted) trust fund which it established. The fund consisted only of "such sums of money and other property . . . as shall from time to time be paid or delivered to such Trustee in accordance with the provisions of the Plan." Section 1.1, Ex. 8. The trustee has no right or duty to require payment of any contribution. Section 2.1. The Trustee merely administers pursuant to the Plan whatever amounts defendant puts into the fund.

It is of course true that an employer is free (apart from any requirements which ERISA may have imposed) to limit its liability for pensions to a particular fund. *Boase v. Lee Rubber & Tire Corp.*, 437 F.2d 527, 528–29 (C.A. 3, 1970); *Baake v. Gen. Am. Transp. Corp.*, 351 F.Supp. 962, 964 (N.D.Ill.E.D.1972); *Briggs v. Michigan Tool Co.*, 369 F.Supp. 920, 924 (E.D.Mich. S.D. 1974). However, the language used for the employers' limitation of liability in those

1. Section 10.7 provides that in the absence of compliance with these conditions the Union shall be free to strike "with respect to matters relating to pensions only." This shows that the pension agreement is a collectively bargained labor agreement.

2. An identical Section 1.3 is contained in the agreement with Local 7378 (Ex. 3).

3. Ex. 1. This provision is identical in Ex. 3.

cases is much clearer than that used by defendant in the agreements under consideration in the case at bar.

Defendant squarely agreed that the stipulated benefits were to be "provided . . or caused to be provided" by defendant. It was free either to employ a funded trust or to make direct payments, as it might see fit. It is nowhere stated that the only benefits for which defendant is to be liable are those derivable from the assets of the trust fund.

Plaintiffs are suing on defendant's contractual agreement, in what would have been an action of *indebitatus assumpsit* at common law. If defendant becomes a bankrupt plaintiffs could claim as unsecured creditors for non-performance of liability contracted for under the agreement.

■ Nor can defendant rely on the IRS-required amendment to Section 10.2 as an exculpatory clause. That amendment simply provides, giving effect to ERISA, that rights of participants shall become vested and non-forfeitable upon termination of the agreement to the extent that fund assets are available. This has no application to plaintiffs whose pension rights had previously been consummated upon actual retirement.

■■ In spite of the policy in favor of Labor arbitration, the scope of arbitration is governed by the particular language used in the arbitration clause. It seems plain that the clause here does not cover plaintiffs' claim of assumpsit. The arbitration clause is limited in regard to parties and subject-matter to (1) disputes between defendant and an "applicant for a pension" [plaintiffs are not applicants, they have been receiving pensions while the payments continued]; (2) disputes as to a participant's "right to a pension or the amount of his pension" [here there is no such dispute; the problem is simply one of non-payment of the amount due].

Accordingly, defendant's motion must be denied. Plaintiffs' action for breach of contract must proceed to trial in due course.