ALDERNEY DAIRY COMPANY,
INC., Appellant

v.

HAWTHORN MELLODY, INC., and
National Industries, Inc.

No. 80–1948.

United States Court of Appeals,
Third Circuit.

Argued Dec. 2, 1980.

Decided Feb. 23, 1981.

**114**

Peter Hearn (argued), Stephen J. Sund-heim, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellant.

Elliott Abrutyn (argued), Morgan, Mel-huish, Monaghan & Spielvogel, Livingston, N.J., for appellee.

Before ADAMS, GARTH and SLOVI-TER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

This is an appeal from an order granting defendants' motion for summary judgment in a breach of warranty dispute resulting from the sale of an ongoing business. The district court based its order on the ground that defendants did not breach any warranty or representation made in their agreement of sale. We believe the court erred in this finding and therefore vacate the judgment. Because we believe that there may be factual issues to be resolved as to the duration of the warranty, we will remand to the district court.

### II.

On January 20, 1972 appellant, Alderney Dairy Co., Inc. (New Alderney), bought certain assets of Old Alderney, a company which sold and distributed milk and other dairy products. At the time of the sale, Old Alderney was wholly owned by appellee Hawthorn Mellody, which in turn was whol-ly owned by appellee National Industries (hereinafter jointly referred to as "Old Alderney"). The Agreement of Sale provided that New Alderney would assume all of Old Alderney's obligations with respect to, *inter alia*, the industry-wide Pension Plan and collective bargaining agreements. Old Alderney expressly warranted that all of its obligations under the Pension Plan had been performed, and agreed to indemnify and hold New Alderney harmless from any breach of warranty.

The operative provision of the agreement stated:

5. *Buyer's Assumption of Specific Contracts and other Liabilities* : As of January 1, 1972, Buyer assumes and agrees to perform the provisions of only those contract, [sic] agreements, leases, commitments and undertakings (hereafter collectively "Contracts") specifically set forth on Schedule "H" hereto annexed and made part hereof, on Seller's part to be performed, as same shall exist on January 1, 1972. *Seller expressly warrants and represents that all obligations, covenants and agreements in each of said Contracts contained and on Seller's part to be performed, have been duly performed and satisfied* and that except as to any breaches, defaults or violations that may be deemed to have arisen by the execution of this Agreement, no breaches, defaults or violations of any of the provisions of any of said Contracts have been committed or suffered by Seller to the date of this Agreement. Seller hereby agrees to indemnify, protect and save the Buyer harmless from any and all liability, expense, injury or damage of any kind arising from or out of any breach, default or violation by Seller of the foregoing warranty. Subject to the foregoing, Buyer shall hold Seller harmless from and indemnify Seller against any claim or liability for breaches or violation occurring after January 20, 1972 on any Contract so assumed by Buyer, or arising out of or resulting from Buyer's operation of the business after January 20, 1972, provided, however, that due and timely notice shall

be given to Buyer of the assertion of any claim in respect to the foregoing, that Buyer shall be afforded an opportunity to defend and that no settlement shall be made without Buyer's written approval.... (text emphasis added).

A multi-employer collective bargaining agreement and the multi-employer Pension Plan existing pursuant thereto were among the scheduled contracts. Additional representations were made by Frederick Magruder, Vice President and Treasurer of Old Alderney and Senior Vice President of Hawthorn Mellody, to the effect that all undertakings pursuant to the Agreement of Sale were unconditionally guaranteed and that the Pension Plan was paid up.

On June 18, 1974, two and one half years after the sale, employees of Tuscan Dairy Farms, the largest of the employers participating in the Pension Plan, filed a class action in the United States District Court for the District of New Jersey against the trustees of the Pension Plan, Tuscan Dairy Farms, Borden, Inc., New Alderney and others, alleging that the assets of the Plan were being depleted. Plaintiffs sought protection of their pension benefits. While the federal suit was pending, Tuscan received an arbitration award on November 7, 1975 permitting it to withdraw from the Plan and to adopt a separate pension plan covering its own employees. Shortly thereafter, on November 30, 1975, the union and multi-employer bargaining unit entered a new collective bargaining agreement providing that all employers would cease making contributions to the Plan and would, instead, create separate funds to provide pensions for their currently active employees.

Concerned about the interests of the retired employees then receiving benefits, the trial judge, Judge Stern, appointed a receiver to represent the interests of the retired pensioners who were thereafter joined in the suit as class plaintiffs. The receiver interposed a claim in that suit on their behalf, requesting that the employers

be required to cover the cost of lifetime pension benefits owed to the then retired employees. The employers vigorously contested imposition of any such obligation.

In September 1976, Judge Stern issued an opinion and order, reported as *Hurd v. Hutnik*, 419 F.Supp. 630 (D.N.J.1976). He found that the retired employees were entitled to lifetime pensions under the Pension Plan and held the defendant employers jointly and severally liable, each to make contributions according to actuarial projections to be determined. Thereafter, the parties reached a settlement, approved by Judge Stern, under which the Pension Benefit Guaranty Corporation became trustee of the Plan, and each of the defendant employers made contributions in varying amounts to fund that Pension Plan. New Alderney's share of the total settlement was $372,258.00, which it paid in full. A small portion of that amount was directly attributable to New Alderney and is not the subject of the present suit. A large part was attributable to pension rights which vested prior to January 20, 1972, the date of the closing of the sale of Old Alderney.

In this suit filed in the district court on the basis of diversity of citizenship, New Alderney seeks to recover from Old Alderney the amount of the settlement contribution attributable to Old Alderney, plus prejudgment interest and attorney's fees incurred in the *Hurd* litigation. Following discovery, the parties moved for summary judgment.[1]

The district court determined that Old Alderney did not breach any warranty or representation made in the Agreement of Sale dated January 20, 1972. It held that the *Hurd* decision "clearly implies that the breach of the various pension plan agreements did not occur until 1975," more than three years after the Agreement of Sale. *Alderney Dairy Co., Inc. v. Hawthorn Mellody, Inc.*, No. 79–748 (D.N.J., filed May 14, 1980). The court further found that "the fact that in 1972 the pension plan was not

---

**1.** New Alderney sought summary judgment only as to liability because there is a dispute as to the apportionment method to be used to

determine the settlement amount attributable to Old Alderney.

fully funded did not by itself amount to a breach." *Id.* Thus, it denied New Alderney's motion and entered judgment for Old Alderney. Because of its disposition on that ground, the district court did not reach the issue, which the parties had briefed and argued, of the duration of the warranty undertaken by Old Alderney.

## III.

The propriety of the entry of summary judgment for Old Alderney depends on the interpretation of *Hurd v. Hutnik.* If Judge Stern held in *Hurd* that the breach of the obligation to the employees embodied in the Pension Plan occurred because of insufficient funding of the pension plan from its inception in 1962, then Old Alderney breached its warranty and representations to New Alderney contained in the Agreement of Sale. In that agreement, Old Alderney warranted that it had fulfilled all of its obligations under the Pension Plan. On the other hand, if the post-1972 acts of the employers in terminating the Pension Plan constituted the breach which was the basis of the liability imposed on them in the *Hurd* judgment, then there was no breach of the warranty and representations made by Old Alderney in January 1972.

In *Hurd v. Hutnik,* the court considered the contractual relationship and representations made between the employers and employees from the Plan's inception in 1962 to its termination in 1975. The court analyzed the language of the Pension Plan and collective bargaining agreements, other assurances made by the employers and the expectation of the retired employees. Relying on both New Jersey and federal law, the court found that "each retiree acquired a vested right to his pension upon his retirement, which could be neither diminished nor destroyed." 419 F.Supp. at 654. The court rejected the contention of the employers that even if a lifetime pension was promised, it was conditioned on the availability of adequate monies in the fund from which it could be paid. *Id.* at 655. It noted testimony indicating that the employers had been aware that the Plan was endangered by underfunding prior to 1969. *Id.* at 638. The court also found as a fact "that the members of the Milk Industry Association knew . . ., as demonstrated in 1971 when they first sought the destruction of the fund, that termination of the plan would leave the pensioners without financial security in their declining years." *Id.* at 656.

In support of its contention that there was no breach of the obligations under the Pension Plan until 1975, Old Alderney points to the language of the *Hurd* opinion where Judge Stern stated:

> The employers' attempted disavowal of the retirees' vested right to a lifetime pension, as evidenced by the November 30, 1975 collective bargaining agreement, therefore constitutes a breach of contract . . .

*Id.* at 657. According to Old Alderney, the inadequate funding of the Pension Plan did not constitute a breach; the breach occurred only when the employers unilaterally terminated the Plan without making provisions for the past retirees.

Although there is language in the opinion referring to a breach of contract by the employers in 1975, we believe it is more important to focus on what Judge Stern actually ordered as the remedy. He held that each employer signing any of the collective bargaining agreements shall "be jointly and severally liable to provide the pension it promised to each retiree at the time he retired, under the collective bargaining agreement which it signed." *Id.* at 657. Significantly, the court ordered payments by all employers who had been signatories during 1962 to 1975. This liability extended not only to those employers who were participants at the time the November 1975 bargaining agreement terminated the prior Pension Plan but also applied to employers who were not parties to the 1975 bargaining agreement. In the case of Borden, liability was imposed on an employer who was not even in the dairy business in New Jersey in November 1975. Although the court limited Borden's liability to the period from 1962 to 1968 since Borden had not done business in New Jersey and was

not a member of the Plan since December 28, 1968, the assessment of any payment against Borden demonstrated that liability was imposed for acts which occurred prior to 1968. Similarly, although Tuscan withdrew from the Pension Plan as of November 7, 1975 after receiving permission of the arbitrator, and was not a party to the November 1975 collective bargaining agreement which Old Alderney argues constituted the breach, the court imposed liability on Tuscan for the period between 1962 and the date of Tuscan's withdrawal.

In view of the findings and the liability imposed, we cannot accept Old Alderney's contention that *Hurd v. Hutnik* absolves it of having failed its obligations to the pension fund prior to 1972. The imposition of this liability for the prior period is more consistent with New Alderney's claim that the breach of the employers' obligation under the Pension Plan occurred when the employers failed to provide sufficient funds to pay the promised lifetime benefits as they became due.

 Where an employer has agreed to fund pension benefits and does not do so on an ongoing, actuarially sound basis, it may be found to have breached its contract under the collective bargaining agreement that established those benefits. *Briggs v. Michigan Tool Co.*, 369 F.Supp. 920 (E.D. Mich.1974). Even if the collective bargaining agreement of 1975 terminating the prior Pension Plan was a breach of contract between the retirees and the employers signing that collective bargaining agreement which gave rise to a remedy under state contract law or federal labor law, *Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181 n.20, 92 S.Ct. 383, 398, n.20, 30 L.Ed.2d 341 (1971), that would not preclude finding another breach by the employers in the underfunding of the Pension Plan. By concluding that Borden and Tuscan were liable for the periods in which they were signatory employers, Judge Stern clearly found that signatory employers had breached their contractual obligations by permitting the shortfall in

the pension plan during the term of each collective bargaining agreement since 1962.

Under Judge Stern's ruling, Old Alderney was in breach of its obligations under the Pension Plan from 1962 to 1972. Had Old Alderney ceased operations that year rather than selling its business, it, like Borden and Tuscan, would have been directly liable under *Hurd v. Hutnik*. Because Old Alderney's obligations had been assumed by New Alderney, Old Alderney was not brought into that action. Nonetheless, nothing in *Hurd v. Hutnik* immunizes Old Alderney from liability for its representation to New Alderney that its obligations under the Pension Plan had been fulfilled. To the contrary, *Hurd v. Hutnik* established that an obligation remained outstanding.

Thus, we believe entry of summary judgment by the district court in this case on the ground that Old Alderney had not breached any of its representations contained in the January 1972 Agreement of Sale was error.

IV.

Old Alderney argues that even if we reject the district court's reasoning for entering summary judgment, we may nevertheless affirm on the ground that paragraph 16 of the Agreement of Sale bars New Alderney's action. Paragraph 16 provided:

16. *Guaranty by Seller*: In the knowledge that Buyer relies implicitly on same, the Seller hereby guaranties that all representations and warranties of Seller contained in this Agreement and the Schedules annexed or otherwise made in writing pursuant to this Agreement are true and correct at and as of the sale date and that all covenants on the part of the Seller will be fully and faithfully performed. The Seller further agrees that *all such representations and warranties shall continue in full force and effect to the date of this Agreement, and for a period of 1 year thereafter*, except for changes occurring in the ordinary, regular course of day to day business between the sale date and the date hereof, none of which except as stated, are materially

adverse to the Buyer's interests. Buyer, however, is aware of the possible loss of the entire A & P account. (text emphasis added).

Old Alderney asserts that this paragraph circumscribed Old Alderney's undertaking, limiting its agreement by providing that the representations and warranties would continue only for one year following the date of the Agreement. It gave New Alderney one year to discover whether the representations and warranties were true, and to claim a set off against the purchase price. Since it is undisputed that New Alderney did not make any claim with regard to the alleged breach during that period and for some time thereafter, Old Alderney contends that New Alderney's suit should be barred.

■ Exculpatory provisions, including those barring liability for negligence or breach of contract, are generally valid under New Jersey law, so long as they do not violate public policy. *E.g., Farris Engineering Corp. v. Service Bureau Corp.,* 276 F.Supp. 643, 645 (D.N.J.1967), *aff'd,* 406 F.2d 519 (3d Cir. 1969); *Mayfair Fabrics v. Henley,* 48 N.J. 483, 487, 226 A.2d 602, 605 (1967). Such exculpatory provisions include those that impose a period of limitation less than that required by statute. *Custom Line Builders Corp. v. Kansas City Fire and Marine Co.,* 413 F.Supp. 877, 879 (N.D.Ill. 1976). An agreement to limit the period to one year is not so unreasonable as to constitute a violation *per se* of public policy. The Uniform Commercial Code specifically allows such a provision to be included in a contract for a sale of goods. U.C.C. § 2–725(1). Courts have upheld provisions for shorter periods in other types of contracts. *See, e. g., Hartford Accident and Indemnity Co. v. Heftler Construction Co.,* 325 F.2d 107 (7th Cir. 1963) (ten months in subcontracting agreement). There is no claim in this case of other grounds on which such a contractual limitation might be repugnant to public policy. If paragraph 16 may be construed as Old Alderney contends it should be, no public policy would be offended and New Alderney would be barred.

Further, there is no claim of concealment or fraud here which would preclude Old Alderney from availing itself of a provision shortening the period in which suit may be brought. Judge Stern in *Hurd v. Hutnik,* 419 F.Supp. at 656, expressly found that the pension obligations of the employers were obvious and understood by the employers. The actuarial information indicating the underfunding was accessible to New Alderney at all relevant times after the Agreement of Sale. The only question is whether paragraph 16 is in fact a provision that limits the undertaking to one requiring notification within one year.

■ Courts have generally given strict construction to agreements to shorten the statutory period of limitation, and have required that the intention to so limit the period be clear. *See, e. g., Schulman Investment Co. v. Olin Corp.,* 477 F.Supp. 623 (S.D.N.Y.1979) (New York law); *Custom Line Builders Corp., Inc. v. Kansas City Fire and Marine Co., supra* (Illinois law). In interpreting a contract provision limiting the time in which an insurer could be sued in *Sherwood Jewelers-Newark, Inc. v. Philadelphia National Insurance Co.,* 102 F.Supp. 103, 104 (D.N.J.1952) (New Jersey law), the court stated:

Since the agreed limitation of the policy is in derogation of the general statute of limitation, the circumstances surrounding the claim of the plaintiff and the defense by the insurance company are carefully examined for a waiver, and courts do not require very stringent evidence of waiver of the limitation period by the defendant in order to defeat the application of the contracted for limitation.

The court then held the plaintiff's action time barred by a provision which stated "No suit or action on this Policy for recovery of any claim shall be sustainable in any court . . . unless commenced within twelve months (12) next after the date of the occurrence which gives rise to the loss . . . ." *Id.* at 103–04.

■ In most cases in which an action was held time barred by contractual agreement, the language of the contract has referred

specifically to the time in which suit may be brought or an action commenced. *See, e. g., International Business Machines Corp. v. Catamore Enterprises, Inc.*, 548 F.2d 1065, 1070 & n.9 (1st Cir. 1976), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977); *Sherwood Jewelers-Newark, Inc. v. Philadelphia National Insurance Co., supra.* New Alderney stresses that such precise language is absent here. It contends that paragraph 16 is to be construed as meaning only that any breach which occurred as of the sale date or within one year thereafter was actionable. Thus, according to New Alderney, since the breach occurred no later than January, 1972, paragraph 16 should not be read to bar its claim. In addition, at oral argument, counsel for New Alderney suggested that the intent of paragraph 16 was not to shorten the period in which suit can be brought but to provide a period for reconciliation of accounts receivable. Counsel recognized that the record is silent on this point.

We note that the district court made no findings with respect to the construction of paragraph 16 because of its disposition of the case on other grounds. We believe that there is sufficient ambiguity in the language of paragraph 16 to warrant its consideration in the first instance by the district court. The district court may, in its discretion, hold an evidentiary hearing to adduce additional evidence which may be needed so that it can make findings on the construction of paragraph 16 to resolve the ambiguity of the contractual language.

### V.

We will therefore vacate the order of the district court granting summary judgment to Old Alderney on the issue of liability and remand for further proceedings consistent with this opinion.